Adoption of Simone.

# ADOPTION OF SIMONE.[1]

Hampden. January 5, 1998. - March 5, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Adoption,* Care and protection, Dispensing with parent's consent. *Parent and Child,* Care and protection of minor, Dispensing with parent's consent to adoption. *Minor,* Care and protection, Adoption. *Due Process of Law,* Care and protection of minor, Adoption. *District Court,* Jurisdiction. *Jurisdiction,* Custody of child. *Evidence,* Judicial notice, Relevancy and materiality.

The notice of a petition to dispense with parental consent to the adoption of a child, which clearly apprised the mother of the child of the need to appear and object if she so wished, did not deprive the mother of due process of law. [39-41]

This court concluded that, based on the language and legislative history of G. L. c. 210, § 1, and the provisions of G. L. c. 119, during the appeal of a District Court care and protection adjudication, the District Court retains general jurisdiction to hear a petition brought under G. L. c. 210, § 3, to dispense with parental consent to that same child's adoption. [41-43]

In a proceeding to dispense with parental consent to adoption, a District Court judge properly took into account his own earlier findings from a care and protection proceeding concerning the same child, where those findings were relevant in determining the best interests of the child. [43-44]

A District Court judge correctly dismissed a mother's appeal of a care and protection order regarding her child, where the judge's decision on a subsequent petition to dispense with the mother's consent to adoption of the child had rendered the appeal moot, and where, in any event, the mother's failure to prosecute her appeal in a timely manner warranted its dismissal. [44-45]

PETITION filed in the Holyoke Division of the District Court Department on September 25, 1990.

The case was heard by *Philip A. Contant,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Paul Schack* for the mother.

*Virginia A. Peel* for the Department of Social Services.

[1]A pseudonym.

*John F. Moriarty, Jr.*, for the foster parents.

*Warren M. Yanoff* for the child.

FRIED, J. The mother appeals from a District Court order dispensing with the need for her consent to the adoption of her daughter, and dismissing her appeal of its earlier review and redetermination of a care and protection decision. The mother raises four issues: (1) that she was denied due process of law because the notice of petition by the Department of Social Services (department) to dispense with her consent to adoption was insufficient to apprise her of the need to enter an appearance to oppose the petition; (2) that the District Court did not have subject matter jurisdiction to entertain the motion to dispense with her consent to adoption; (3) that the District Court judge committed an error when, in the proceeding to dispense with the need for her consent to adoption, he took judicial notice of his earlier findings in connection with his care and protection review and redetermination; and (4) that the District Court judge erred in dismissing her appeal of the care and protection review and redetermination order for failing to prosecute the appeal, because her delays were excusable delays. We brought the case here on our own motion, and now affirm.

I

On September 25, 1990, the department filed a care and protection petition, pursuant to G. L. c. 119, § 24, seeking immediate custody of the mother's four children. This case concerns the youngest of those four children, Simone. The department alleged that the mother, who had come with her children from Connecticut to stay with her sister in Holyoke after an incident of domestic violence between the mother and her boy friend, had returned to Connecticut leaving her children with her sister. The boy friend is said to be the father of the three youngest children. On January 22, 1991, the District Court judge found the four children to be in need of care and protection, and granted custody of the children to the department pursuant to G. L. c. 119, § 26. The department placed the children in foster care. Simone, who was six months old at the time, was placed with foster parents, with whom she has lived since then.

On June 12, 1992, the mother and the father filed a motion for a review and redetermination of the January 22, 1991, care and protection determination. The foster parents were permitted

to intervene, and the review and redetermination hearing commenced on March 16, 1993. On October 12, 1993, the parties entered into a stipulation to suspend the hearing as to Simone's three older siblings and to put in effect a plan to reunite them with their biological parents. Sometime in December of that year, the three older children were returned to the biological parents. During the review and redetermination proceeding, the department also argued for Simone's reunion with her biological parents.

On December 22, 1994, the judge issued a memorandum of decision, in which he found:

1.  The mother abandoned her four children at her sister's house in September, 1990, and neither the mother nor the father contacted the department until May, 1991, despite their knowledge that the department had custody of the children at least since January, 1991. Thereafter, the biological parents attended only five of the twenty available DSS-arranged visits with their children.

2.  From the mid-1980's up through the time of abandonment, the mother and the father lived very chaotic and irresponsible lives, marked by drug and alcohol abuse (even during the mother's pregnancies), domestic violence, unstable housing and frequent moves, and neglect of the children. They often left one or more of the children with other caretakers for days, weeks, and even months.

3.  The biological parents had, to some extent, stabilized their lifestyles, and were, at the time of the hearing, fit to parent children in general.

4.  Simone has thrived in the foster home, and has developed extremely healthy and loving bonds with the foster parents and their extended family.

5.  In light of clear and convincing evidence, Simone would be at a substantial risk of suffering extreme psychological trauma with potentially lifelong ramifications if she were to be removed from her foster home and reunited with her biological parents.

6.  Simone's suffering of extreme psychological trauma in the event of her reunion with the biological parents is not inevitable, and could be mitigated substantially by the

conduct of both sets of parents during a gradual transition period.

7. While the foster parents are capable and willing to make the necessary sacrifices and commitments to ease the transition, the biological parents do not have the psychological and intellectual capacity or the will and discipline to respond appropriately to Simone's needs during the transition period.

Relying on this last consideration, the judge concluded that Simone was still in need of care and protection, and granted permanent custody of Simone to the department. The mother filed a notice of appeal on January 3, 1995; the father, on January 23.

On January 25, 1995, the foster parents and Simone's court-appointed counsel petitioned, pursuant to G. L. c. 210, § 3, to dispense with the biological parents' consent to Simone's adoption. Meanwhile, the department had changed its goal from reunification to adoption. On February 3, 1995, the department joined the foster parents and Simone in filing a motion to amend the care and protection petition to include the petition to dispense with consent to adoption. At a hearing on the same day, the mother informed the judge that she desired to proceed pro se despite the judge's advice against such a move. Prior to that date, the Committee for Public Counsel Services (CPCS) had appointed appellate counsel for the mother. Counsel had filed her appearance with the District Court on January 30, 1995, in order to prosecute the mother's appeal of the December 22, 1994, care and protection review and redetermination order.

Some time in March of 1995, the biological parents moved to Puerto Rico with their three older children. Shortly thereafter, the mother informed the District Court of the change of their address. On August 2, 1995, the mother and the father were served with the summonses pertaining to the § 3 petition to dispense with consent to Simone's adoption. The bottom portion of the summons stated:

"IF YOU DESIRE TO OBJECT THERETO YOU OR YOUR ATTORNEY MUST FILE A WRITTEN APPEAR-ANCE IN SAID COURT AT Holyoke District Court, Court House Square, Holyoke, MA on September 7, 1995 at 2:00 p.m."

It does not seem that any copy of the summons was forwarded to the appellate counsel for the mother.

On September 8, 1995, counsel withdrew and requested that CPCS appoint a new appellate counsel for the mother. On October 26, 1995, CPCS assigned new appellate counsel to the mother. The new counsel claims that he found out about the summons only in December, 1995. He filed the mother's opposition to the department's § 3 motion on December 15. Counsel stated that he had only recently been appointed, and that he had yet to speak with the mother but believed that she would want to oppose the petition. On January 11, 1996, the department's and Simone's counsel filed motions to strike the mother's opposition. The court received the father's opposition by facsimile transmission on January 16, 1996. The original was received on January 23.

The judge considered all motions on January 19, 1996. Neither biological parent was present. The judge granted the department's and Simone's motions to strike the biological parents' oppositions as untimely, and entered a judgment and order dispensing with the biological parents' consent to Simone's adoption. The judge also took under advisement the department's motion to dismiss the mother's appeal of the care and protection review and redetermination order of December 22, 1994.

On May 20, 1996, the mother's counsel filed a motion to dismiss the § 3 petition, claiming that the court lacked subject matter jurisdiction, and that the mother had been denied due process of law. He also filed a motion to stay all proceedings. On May 29, 1996, in a hearing on the mother's motions, the judge denied both motions, and issued a two-page "judge's memorandum" entering the decree dispensing with the biological parents' consent to Simone's adoption. It is not clear how soon after the January 19 hearing the judge executed the decree incorporating this judgment. The department had obtained a copy of the decree, but the mother's counsel informs us that he, in spite of inquiries, did not become aware of the decree until the May 29 hearing. On that day, the department announced that it had obtained the decree, and that the adoption was scheduled to take place the following morning.

Immediately after the hearing, on the same day, the mother's counsel appealed to a single justice of this court. He complained that the department had obtained the decree ex parte, that the

mother had not been provided with any notice that the decree had been issued, and that the decree had not been docketed in the District Court, thereby depriving the mother of her right to appeal. The single justice temporarily stayed the adoption proceeding, but later denied relief after a hearing.

Only on June 10, 1996, did the District Court judge issue a written decision, entitled "chronology and memorandum of decision," setting out his reasons for the January 19, 1996, rulings. The decision granted the motion to dispense with the biological parents' consent to Simone's adoption. The judge also dismissed the mother's appeal of the December 22, 1994, order, noting that the appeal of the care and protection determination was made moot by the allowance of the § 3 petition, and that the mother had failed to take any action to prosecute the appeal for nearly eleven months. The judge also stated that, in the process of reaching these decisions, he took judicial notice of his December 22, 1994, findings, and further noted that the biological parents had not contacted Simone or the department since their move to Puerto Rico in March, 1995.

On June 18, 1996, the mother filed a notice of appeal of the allowance of the department's § 3 petition and of the dismissal of the appeal of the December 22, 1994, care and protection order.[2]

## II

### A

Parents have a constitutionally protected interest in maintaining a relationship with their children. *Armstrong* v. *Manzo*, 380 U.S. 545, 550 (1965). *Adoption of Eugene*, 415 Mass. 431, 435 (1993). *Department of Pub. Welfare* v. *J.K.B.*, 379 Mass. 1, 3-4 (1979). Before that relationship is severed, due process requires that there be notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong* v. *Manzo, supra* at 552; *Adoption of Eugene, supra* at 435; *Department of Pub. Welfare* v. *J.K.B., supra* at 4. The mother argues that she had not received sufficient notice and opportunity to be heard, and therefore that she had been denied due process of law in the January 19, 1996, proceeding to dispense with the biological parents' consent to Simone's adoption.

---

[2]The father's notice of appeal, filed on June 24, 1996, was later dismissed.

The mother first points to the judge's failure after the January 19, 1996, hearing to forward to her or to her counsel a copy of the decree dispensing with the biological parents' consent to Simone's adoption while the department had obtained a copy ex parte. The District Court's oversight, conceded by the judge, does not relate at all to the mother's failure to appear before the District Court on September 7 of the prior year.

The mother also contends that the summons of August 2, 1995, led her to believe that she did not need to enter an appearance to oppose the petition to terminate her parental rights.[3] According to her, because the summons bore the same title and docket number as the care and protection case, in which she had already filed an appearance, she assumed that that earlier appearance protected her for the purpose of objecting to the § 3 petition to dispense with consent to adoption. This argument is without merit. The summons clearly stated that the department had moved to dispense with the biological parents' consent to Simone's adoption, and that the biological parents would need to file a written appearance in the District Court if they desired to object thereto. That the title and docket number were the same as in the prior proceeding could not reasonably be taken to negate such clear language. At the very least, some inquiry was in order. "[N]otice of facts which would incite a person of reasonable prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would develop." *Commonwealth* v. *Olivio*, 369 Mass. 62, 69 (1975), quoting *Essex Nat'l Bank* v. *Hurley*, 16 F.2d 427, 428 (1st Cir. 1926). See *Adoption of Hanna*, 33 Mass. App. Ct. 542, 543-544 (1992).

The mother also points out that no copy of the summons was forwarded to her then appellate counsel. However, counsel was assigned by CPCS to handle the appeal of the District Court's December 22, 1994, care and protection order. The mother had insisted on representing herself in the District Court. And at the time she informed the judge of her intent to proceed pro se, the judge had ordered her then counsel to remain as a standby counsel. The mother had the option of seeking her standby

[3]She does not dispute that, on August 2, 1995, she was served in hand with a summons informing her that the department had petitioned the District Court to dispense with the biological parents' consent to Simone's adoption. Nor does she argue that she, as a native Spanish speaker, had any difficulty understanding the content of the summons.

counsel's, or any other lawyer's, advice in determining her rights and obligations in relation to the summons.

## B

The second paragraph of G. L. c. 210, § 1, states that the District Court may exercise the power to dispense with the biological parents' consent to adoption "only in respect to a pending proceeding" before the District Court. The judge issued his written decision on the care and protection review and redetermination on December 22, 1994. The biological parents filed their notice of appeal shortly thereafter and before the foster parents and Simone's counsel filed a motion to dispense with biological parents' consent to adoption on January 25, 1995. The mother argues that the care and protection case was no longer *pending* when the § 3 motion to dispense was filed, and hence that the District Court lacked subject matter jurisdiction according to G. L. c. 210, § 1.

Prior to 1992, even if a care and protection proceeding regarding a child was before the District Court, it was necessary to file a § 3 petition to dispense with the biological parents' consent to the same child's adoption in the Probate and Family Court. According to G. L. c. 210, § 3 (*b*), and c. 211B, § 9, it was possible to obtain from the Chief Administrative Justice of the Trial Court an interdepartmental assignment of a District Court judge to hear both petitions. In 1992, §§ 1 and 3 of c. 210 and § 26 of c. 119 were amended to confer on the District Court jurisdiction to hear § 3 petitions, thus facilitating the combining of the two proceedings. See St. 1992, c. 303, §§ 2-4; St. 1992, c. 379, § 59. The paragraph added to c. 210, § 1, by the 1992 amendments, the very paragraph on which the mother bases her jurisdictional argument, states:

> "The district or juvenile court may, if it appears necessary or convenient, exercise the powers authorized by this chapter, but only in respect to a pending proceeding before such district or juvenile court."

It is true that, even after 1992, the District Court does not have jurisdiction identical to that of the Probate Court with respect to § 3 petitions. According to the last clause of § 1, the District Court may hear § 3 petitions only in connection with proceedings "pending" before the same court. See R.L. Ireland, Juvenile Law § 130 (Supp. 1996). The mother interprets this

last clause to mean that the District Court lacks the jurisdiction to hear the § 3 petition because it has already reached its decision on a care and protection petition or a review and redetermination of a care and protection order.

Several provisions of c. 119 undermine the mother's jurisdictional argument. Section 27 governs appeals from adjudications regarding a child's custody in accordance with §§ 24-26. The provision states, in part: "The district court or juvenile court where the order of adjudication was entered shall retain jurisdiction to and may enter any order for the needs of the child." The mother argues that it is unreasonable to read § 27 as stating that when the District Court has made a care and protection adjudication, it retains general jurisdiction over all proceedings and for all purposes pending an appeal from that care and protection adjudication. She argues that the District Court is divested of general jurisdiction upon entry of an appeal, and § 27 recognizes the District Court's limited jurisdiction to enter necessary orders pertaining to a child's temporary needs — such as medical and educational needs — while the child is in the department's custody.

An examination of c. 119 as a whole, however, indicates that the Legislature envisioned continuing general jurisdiction of the District Court. The final paragraph of § 26 states that after the initial adjudication regarding the custody of the child, an interested party may petition every six months for a review and redetermination of the current needs of the child "whose case has come before the court." The same paragraph, after setting forth the time frame for a final order of adjudication and permanent disposition of a custody dispute, states: "The court shall not lose jurisdiction over the [review and redetermination] petition by reason of its failure to enter a final order and the findings in support thereof within the time set forth in this paragraph." Also, according to § 29B, within eighteen months of the original commitment or custody transfer and periodically thereafter, the "committing court shall reconvene . . . to determine the future status of the child, including but not limited to whether or not it is in the child's best interests . . . to be placed for adoption . . . ." We therefore reject the mother's interpretation of c. 210, § 1, and conclude that the District Court in this case retained subject matter jurisdiction to hear the § 3 petition even after its December 22, 1994, order on the care and protection review and redetermination.

Our rejection of this and the preceding claim is dictated not simply by the quite sufficient formal arguments we recite. Another conclusion would introduce undesirable and unnecessary delays where the best interests of the child demand fair but prompt resolution. See *Adoption of Galen*, 425 Mass. 201, 206 (1997); *Custody of a Minor (No. 1)*, 391 Mass. 572, 577 (1984). This was surely the legislative intent in the 1992 statutory changes.

## C

In his June 10, 1996, chronology and memorandum of decision, the judge stated that, during the January 19, 1996, proceeding, he took judicial notice of his findings in connection with the December 22, 1994, care and protection review and redetermination. The mother argues that this was error, citing this court's opinions in *Adoption of Frederick*, 405 Mass. 1 (1989), and *Adoption of Paula*, 420 Mass. 716 (1995).

In *Frederick*, this court held that in a proceeding to dispense with biological parents' consent to adoption, a parent is not bound, under collateral estoppel principles, by the prior findings of a court which adjudged the child to be in need of care and protection. *Adoption of Frederick, supra* at 6. We went on to state, however:

> "The findings from the care and protection proceeding may be introduced in evidence at the trial on a petition to dispense with consent to adoption to the extent they are both relevant and material."

*Id.* at 12. And in *Paula*, we stated:

> "[F]indings of fact in a care and protection proceeding which are not 'out of date, or the product of a proceeding where the parent may not have a compelling incentive to litigate . . . may be introduced in evidence at the trial on a petition to dispense with consent to adoption to the extent that they are both relevant and material.' "

*Adoption of Paula, supra* at 721. We went on to note, however:

> "We think . . . that the better practice would be for a judge to decline to admit as evidence in an adoption proceeding findings from an underlying care and protection proceeding that are on appeal."

*Id.* at 722.

Thus the *Paula* decision did not preclude a judge entertaining a motion to dispense with biological parents' consent to adoption from taking into account earlier findings during a care and protection proceeding. The *Adoption of Paula* decision said no more than that such earlier findings may not be taken as dispositive, as they would be if the parents were collaterally estopped from contesting them. While expressing a preference for fresh findings in the second proceeding, we were clearly mindful that the earlier findings might, in appropriate cases, be relevant and reliable.

In the present case, the findings in the care and protection proceeding were indeed relevant in determining Simone's best interests. See G. L. c. 210, § 3 (*b*), (*c*). Furthermore, the same judge presided over both proceedings and found no reason to revise his earlier findings. Rather, he had reason to take an even more unfavorable view of the biological parents' abilities to parent Simone: the judge found that, since moving to Puerto Rico, the biological parents took no step to contact Simone or the department.[4] Moreover, the judge was presented with further evidence on January 19, 1996, that Simone was thriving in the foster home, and that the relationship between Simone and the foster parents was loving and positive.

### D

In his December 10, 1996, chronology and memorandum of decision, the judge announced his decision to dismiss the mother's appeal of the December 22, 1994, care and protection order. The mother argues that the judge erred in dismissing her

---

[4]The chronology and memorandum of decision stated:

"The Court finds that [the biological parents'] recent history (3/1/95-1/19/96) of complete non involvement with their child [Simone] and their non involvement/lack of cooperation with [the department], are particularly significant given the long history of similar behaviors throughout [Simone]'s life as set forth in the Court's 12/22/94 Memorandum of Decision, which again, is incorporated herein by reference. *The problems and difficulties expressed therein, relative to any plan to reunite [Simone] with her biological parents have only been exacerbated by the substantial passage of time and by the biological parents' continued pattern of abandonment of said child*" (emphasis added).

appeal. The judge quite correctly ruled that his decision on the petition to dispense with parental consent to adoption rendered the appeal of the care and protection decision moot. The judge also dismissed the appeal for failure to prosecute the appeal between January 3, 1995, when the mother filed her notice of appeal, and November 27, 1995, when the mother's counsel requested a stay of proceedings so he could talk to her. The mother does not address the mootness issue, but argues that her delay in prosecuting the appeal was excusable. Rule 9 (c) (1) of the Massachusetts Rules of Appellate Procedure, as amended, 378 Mass. 936 (1979), states that an appellant shall "perform any act reasonably necessary to enable the clerk to assemble the record." Rule 8 (b) (3) of the Massachusetts Rules of Appellate Procedure, as amended, 388 Mass. 1106 (1983), enumerates actions the appellant needs to take if he needs any part of the electronic recording of the lower court proceeding to be transcribed and assembled for his appeal. The mother repeatedly failed to take the steps outlined in rule 8 (b) (3) in a timely manner. Consequently, a trial transcript was not ready when the January 19, 1996, hearing was held. The mother offers no justification or explanation for the delay except to mention that the recordings of the trial proceedings were voluminous and partly in Spanish. The judge's dismissal of the mother's appeal for the reason of her failure to comply with rule 9 (c) (1) was clearly warranted. See Mass. R. A. P. 10 (c), as amended, 417 Mass. 1602 (1994).

The judge's order granting the petition to dispense with parental consent to adoption of Simone and the judge's order dismissing the mother's appeal are affirmed.

*So ordered.*